WILLIAM H. HARDING, Appellant, v. ST. LOUIS UNION TRUST COMPANY, Executor of Estate of ROGER E. HARDING.

**In Banc, December 14, 1918.**

1. **TRUST: Executed: Voluntary: Irrevocable.**    An executed trust in personal property may be validly created by express declaration and present conveyance of the property to a definite beneficiary, and when thus completed it is irrevocable, though voluntary.

2. ——: **Necessary Evidence.**    To establish an executed voluntary trust in personal property the evidence showing its creation must be so clear, full and demonstrative as to remove any reasonable doubt from the mind of the chancellor as to the existence of every element essential to its complete establishment.

3. ——: ——: **No Present Establishment.**    If the evidence shows that the purpose of decedent was not to create a trust *in praesenti,* but only upon condition that some mishap, like death, might overtake him while on an anxious journey to a distant city, no executed trust in the undelivered personal property was created.

4. ——: **Executory.**    Equity never enforces a mere executory voluntary agreement for a trust.

5. ———: **Consideration.** If the express trust was fully completed in the manner prescribed by law, the question of consideration is of no moment; but where the language used is merely an agreement to create a trust in favor of a designated beneficiary in undelivered personal property, upon a contingency, which did not happen, the fact that the agreement was wholly voluntary is of importance.

6. ———: **Use and Control of Property.** The fact that decedent did not, by act or by the letters and indorsements relied upon, convey any present equitable title to the beneficiary and did not deprive himself of the full use and control of the designated personal property throughout the seventeen years he continued to live, is significant as bearing on decedent's intention to create an irrevocable trust.

Appeal from St. Louis City Circuit Court.—*Hon. Leo S. Rassieur*, Judge.

AFFIRMED.

*Grant & Grant* for appellant.

(1) When a person *sui juris* orally or in writing explictly or impliedly declares that he holds personal property for another, he thereby constitutes himself an express trustee. Perry on Trusts, secs. 82, 86. (2) The evidence showed a valid declaration of trust because the inscription on the outside of the envelope in the handwriting of the deceased, taken together with the signed letter of the deceased, also in his handwriting, contained three things necessary to create a parol trust in personal property: first, a clear declaration that the property did not belong to Roger E. Harding, but that he held it for another; second, there was a definite subject-matter of the trust, to-wit, the sixteen railroad bonds; and, third, there was a definite object or beneficiary of the trust, to-wit, Wm. H. Harding. Northrip v. Burge, 255 Mo. 654. (3) In order to render a sufficiently expressed, voluntary trust valid, it is only necessary that the trustor should have done everything which could have been done, the character of the property comprising the trust being considered,

to transfer the property to the trustee in such mode as will be effectual to pass the title; and the settlement being beneficial to the donees, acceptance will be presumed. In re Soulard's Estate, 141 Mo. 662. (4) It is no objection to the validity of a trust that it is purely voluntary. Leeper v. Taylor, 111 Mo. 324; Pomeroy Eq. Jur. (2 Ed.) secs. 996-997; Harris Banking Co. v. Miller, 190 Mo. 640; Watson v. Payne, 143 Mo. App. 721; Stone v. Hackett, 12 Gray (Mass.), 227. (5) It is not necessary that a third person should be trustee. The donor may constitute himself trustee. Northrip v. Burge, 255 Mo. 654. (6) The donor or trustor may not only make himself the trustee, but he may even reserve a life interest in the property and collect the interest or income thereof without impairing the validity of the trust. Davis v. Ney, 125 Mass. 590; Harris Banking Co. v. Miller, 190 Mo. 640. (7) The Statute of Limitations did not apply in this case in either suit to any portion of the property involved because this was a continuing express trust in favor of Wm. H. Harding, and there was no evidence showing or tending to show that the trustor, the deceased, ever openly repudiated the trust, to the knowledge of the plaintiff. Johnson v. United Railways, 243 Mo. 296; Bent v. Priest, 86 Mo. 475; Johnson v. Smith, 27 Mo. 591; Smith v. Ricords, 52 Mo. 581.

*E. T. & C. B. Allen* for respondent.

(1) A disputed trust cannot be enforced at law. Ewing v. Parrish, 148 Mo. App. 492; Johnson v. Rd., 243 Mo. 304; Landis v. Saxton, 105 Mo. 489. Until the trust is determined, plaintiff would have neither a legal or equitable right to possession. Until such right was established plaintiff could not maintain replevin or conversion. Leete v. Bank, 141 Mo. 586; O'Toole v. Lowenstein, 177 Mo. App. 665; Botsford v. Bradfield, 141 Mich. 375; Fischer v. Alstein, 186 Mass. 549; Penton v. Hauser, 13 Okla. 452; Fulton v. Fulton, 48

Barb. 581; 38 Cyc. 2049. (2) Any right plaintiff had to money collected on the coupons or bonds arose at the time defendant's testator is alleged to have collected them, and to all such collections prior to September 8, 1909, plaintiff's right has been barred by the five-year Statute of Limitations. Landis v. Saxton, 105 Mo. 491; Prewitt v. Prewitt, 188 Mo. 683; Johnson v. Railroad, 243 Mo. 300; Eliott v. Machine Co., 236 Mo. 546. (a) Plaintiff knew as early as 1898 that his father was in no wise accounting to him for the coupons and bonds which his petition alleges his father collected. Plaintiff acquiesced therein although he was estranged from his father. This is inconsistent with the idea that Roger E. Harding held the bonds as trustee for plaintiff. (b) It necessarily indicated that both parties regarded the bonds and coupons as Roger E. Harding's. The claim is barred by the ten-year statute. Brown v. Selding, 105 App. Div. 509, 94 N. Y. Supp. 292; Oelke v. Theis, 70 Neb. 405; Sims v. Sims, 2 Ala. 117; Trubey v. Pease, 240 Ill. 523; Crissman v. Crissman, 23 Mich. 218. (3) There is no evidence that plaintiff ever made a demand on the defendant for the bonds. Defendant's possession being lawful, it so remained until it refused to give up possession. Nansen v. Jacobs, 93 Mo. 331. (4) There was not a sufficient delivery to support a gift either *inter vivos* or *causa mortis*. Foley v. Harrison, 233 Mo. 460; Northrip v. Burge, 255 Mo. l. c. 674; Terry v. Glover, 235 Mo. 550; Harris Banking Co. v. Miller, 190 Mo. 640; In re Soulard Estate, 141 Mo. 660; Bank v. McKenna, 168 Mo. App. 254; Mulock v. Mulock, 156 Mo. 441; Pitts v. Weakley, 155 Mo. 135. (5) Equity does not lend assistance to voluntary disposition of property while they are yet executory. Pennell v. Ennis, 126 Mo. App. 360; 28 Am. & Eng. Ency. Law (2 Ed.), 865. (6) The question in this class of cases is not whether the preponderance of the competent evidence shows that the alleged trust was executed, but it is, whether that fact is established by evidence so clear, certain, complete and convincing as to remove all reason-

able doubts on the subject. Northrip v. Burge, 255 Mo. 655; Ferguson v. Robinson, 258 Mo. 113; Pitts v. Weakley, 155 Mo. 109; Mulock v. Mulock, 156 Mo. 431; Heartley v. Nicholson, 19 L. R. Eq. 233; Ferguson v. Robinson, 258 Mo. 113; Evans v. Evans, 196 Mo. 20. (7) For a man to make himself a trustee there must be an expression of an intention to become a trustee, whereas words of present gift show an intention to give over property to another and not to retain in the donor's own hand for any purpose, fiduciary or otherwise. What is intended as a gift but is imperfect as such, cannot be treated as a declaration of trust. Young v. Young, 80 N. Y. 437; Bank v. Webb, 21 R. I. 218; Richard v. Delbridge, 18 L. R. Eq. 11; Achman Estate, 223 Pa. St. 543; Hamilton v. Hall, 111 Mich. 291; Clay v. Layton, 134 Mich. 331; Trimmer v. Danby, 25 Law J. Ch. 421; Lane v. Ewing, 31 Mo. 86; Ferguson v. Robinson, 258 Mo. 113; Northrip v. Burge, 255 Mo. 674; McKee v. Allen, 204 Mo. 655; Pitts v. Weakley, 155 Mo. 135; Knapp v. Publishers, 127 Mo. 77. (8) In determining the validity of a voluntary settlement, the fact that the gift is not to take effect until after the donor's death, is often of controlling weight. The instant case was an attempted testamentary disposition. Sims v. Brown, 252 Mo. 66; Heartley v. Nicholson, 19 L. R. Eq. 233; Young v. Young, 80 N. Y. 437; Sterling v. Wilkinson, 83 Va. 798.

BOND, C. J.—I.   These are suits by one of the children of Roger E. Harding, against his executor, to recover certain street railway bonds, and also the amount collected by the executor upon certain coupons attached to said bonds.

The answer was a general denial, coupled with a plea of the Statutes of Limitations of five and ten years. Issue was taken by reply. The defendant had judgment and the plaintiff duly appealed.

II.   The preponderance of the competent evidence in the record shows the facts upon which plaintiff's

claims are based to be that on December 10, 1897, Roger E. Harding, living in St. Louis and about to make a trip to California to aid his daughter who had married unhappily and was in dire distress, wrote to his son in New York, informing him of these facts and that he would begin the journey on December eighteenth, adding: "If anything occurs to me, you will find sixteen instead of fourteen R. R. bonds in that package I told you about in the safe deposit box; the two additional are Suburban; in all four Suburban, Nos. 96, 176, 179, 181—instead of two."

This letter also inclosed a list of the bonds and their estimated value at $17,005.

On December seventeenth, Roger E. Harding, still in St. Louis, wrote plaintiff, stating that he did not know what his address would be in Los Angeles, but to write him in care of his daughter, concluding: "The safe deposit box is the same. I have made no change. No. 1233, same as the number of your residence. Before I went to Europe I told you about the 14 bonds, and had you take down the numbers. There are now 16 bonds in the package (all I had) enclose copy of endorsement on package. These bonds are now worth $17,000 or more."

The endorsement referred to in these two letters is, to-wit:

"St. Louis, December 1897. "This package, containing valuables, is the property of William H. Harding, of 1233 Dean St., Brooklyn, N. Y., and I hereby direct my administrator or executor to deliver it to him unopened.

Roger E. Harding.

Witnesses:

"George E. Harding
"T. F. Turner
"R. D. Rash
"Heavy envelope sealed with five seals."

After the daughter of Roger E. Harding, who lived in California, had been granted a divorce, she

came to St. Louis with her father and he took her to the safe deposit box and opened it in her presence and took out the sealed envelopes containing the sixteen bonds and put them back loosely in the deposit box, tore up the envolope endorsed as above, and threw it in the waste basket, making certain explanations to his daughter why he did so, which we exclude as incompetent.

The trust officer who opened the safe deposit box in order to make an inventory after the death of Roger E. Harding, states that it did not contain an envelope sealed and endorsed as described in the memorandum sent to plaintiff, and that he thought the sixteen bonds were lying loose in the box.

Roger E. Harding gave plaintiff a house in Brooklyn, $12,500, and $7,000 in bonds for the education of a son of plaintiff and grandson of the deceased. and also made plaintiff beneficiary of a five-thousand-dollar life policy, and by the terms of his will excluded plaintiff from his estate, stating that he had received all that he was entitled to.

Unless the foregoing fact established a completely executed trust in the sixteen bonds claimed by plaintiff, this suit must fail.

III.    That an executed trust may be validly created in personal property by express declaration and

Trust.    *present* conveyance of such property to a definite beneficiary, and that when the trust has been thus completed, it is irrevocable, though voluntary, is the settled law of Missouri and elsewhere. [Northrip v. Burge, 255 Mo. l. c. 654, par. 2 et cases cited; Ibid 674, par. 5; Bank v. McKenna, 168 Mo. App. l. c. 257; In re Estate of Soulard, 141 Mo. l. c. 660.]

It is equally elementary that such a trust can be enforced only upon evidence so clear, full and demonstrative as to banish any reasonable doubt from the mind of the chancellor as to the existence of every element essential to the establishment of a complete express trust in personal property. [Northrip v.

Burge, 255 Mo. 1. c. 655, et cases cited; Ibid, 1. c. 668.]

It is obvious that the plaintiff's entire case rests upon the terms of three documents: two letters and the copy on an endorsment on the package under five seals. If these stood alone, aside from the negative and explanatory evidence for the defendant, no trust could be decreed, because they show by express terms that it was the purpose of Roger E. Harding to create a trust not *in praesenti,* but only upon the condition that some mishap, like death, might overtake him on a journey about to be undertaken to California to assist a married daughter. That nothing further was intended by the language of the writing of Roger E. Harding when read *in pari materia,* is not only apparent from the contingent terms of the declaration contained in them, but from the further fact that immediately after his daughter had secured a release from her unfortunate state, he brought her to St. Louis and in her presence destroyed the superscription which had been placed upon the package of bonds to provide for their future delivery to plaintiff upon the happening of the contingency mentioned in his executory agreement. This contingency not occurring, Roger E. Harding opened the package, took the sixteen bonds and placed them loosely in his safe deposit box and destroyed the envelope, with its superscription, which had contained them. This manifestation of the construction given by Roger E. Harding to the terms of his letters of December seventh and seventeenth, is convincing, as, indeed, the language itself fairly imports that his agreement as to this personal property was purely temporary and intended only to take effect in case any future mishap, like death, should overtake him before he should return to St. Louis. No more enlightening view of the language used by Roger E. Harding in his letters to plaintiff could be afforded than his own actions in dealing with the property therein referred to. He construed his letters and declarations as their language justified; for by the terms of these writings and in the light of circumstances sur-

rounding the parties, they only evidenced an *executory* agreement to create a future trust, *for a wholly undisclosed purpose,* which trust agreement should fail upon the non-happening of the contingency upon which its completion depended. It being obvious, therefore, that the evidence relied on by plaintiff did not afford any proof whatever of an executed and *completed* trust but only tended to show an executory agreement for a trust of some kind, to arise upon a future contingency, the conclusion is unavoidable that plaintiff was entitled to no recovery in the present case.

The authorities are uniform (many of them cited in the briefs of the parties) that equity never enforces a *mere executory* agreement for a trust, which, like the present, is wholly voluntary. If the trust had been completely executed, as prescribed by law, then the question of consideration would be of no moment; but where, as here, no such trust was shown by the language relied upon to establish it, it necessarily follows that there could be no decree of enforcement. The obstacle to any relief in this case arose upon the infirmity of the written agreements relied upon to support the action.

No executed and completed trust having been shown by any evidence whatever, it becomes wholly unnecessary to speculate as to what use, or for whose contingent benefit, Roger E. Harding intended to devote the sixteen bonds in case his executory agreement had ripened into a fully consummated trust.

As bearing on his intention not to create an irrevocable trust, it is also significant that he did not by any language or act, convey any *present equitable* title to plaintiff nor deprive himself of the full use and control of the bonds in question, which the record shows he exercised during his life and without question by the plaintiff for a period of seventeen years after the date of the letters and endorsement relied upon by him to support his claim. That these suits present matters of purely equitable cognizance, is manifest from what is shown in the record and, indeed, is frankly confessed in

the brief prepared for plaintiff (appellant) where it is stated that, failing the sufficiency of evidence to show "a declaration of trust in which the deceased Roger E. Harding was the trustee and donor" this suit must fail. [State ex rel. v. Evans, 176 Mo. l. c. 317, 318; Shelton v. Harrison, 182 Mo. App. l. c. 412-3; 10 R. C. L. p. 349, sec. 99; 1 Pomeroy, Equity (3 Ed.), sec. 151; 2 Story, Equity Jurisprudence (14 Ed.), secs. 1300 to 1303; Bispham's Principles of Equity (9 Ed.), sec. 49.]

Holding as we do that the plaintiff has misconceived the legal effect of the writings relied on to support his theory and hence has necessarily failed in adducing proof of any equitable title in him to the property in dispute, it follows that the judgment in favor of the defendant is manifestly correct and will be affirmed. It is so ordered.

*Walker, Faris* and *Williams, JJ.*, concur; *Woodson, J.*, not sitting.