56

**WAHL et al. v. SHEEHAN et al.**

**No. 918.**

District Court, E. D. Missouri, E. D.

Jan. 26, 1944.

John S. Leahy and Herbert E. Barnard, both of St. Louis, for plaintiff.

Harry C. Blanton, U. S. Atty., of Sikeston, Mo., and Russell Vandivort, Asst. U. S. Atty., of St. Louis, Mo., for defendant.

COLLET, District Judge.

Action to recover estate taxes paid to the Collector of Internal Revenue by the estate of John B. Wahl under protest. John B. Wahl, an elderly bachelor of means, died in November, 1937. When his effects were inventoried there was found in his safe deposit box a sealed envelope containing twenty-five $1,000 Federal Reserve Bank notes. On the sealed envelope appeared the following in Mr. Wahl's handwriting: "Personal—Her Property". On one side of the envelope in the handwriting of Mrs. Minnie S. Tucker (the widow of Arthur Tucker) appeared the following:

"Private, dont open, look over"

"My brother Will H. Roberts, Pierce City, Mo., runs a General & Dry Goods store."

"My niece Mrs. Marie M. Tatum Lives at No. 1501 Cloverdale, Los Angeles, Cal."

On the other side of the envelope, also in the handwriting of Mrs. Tucker, appeared the following:

"Personal property of Mrs. Arthur (Minnie) S. Tucker."

"Give to her in person"

"(over)"

"Husband Arthur S. Tucker died January 15th, 1924. year"

"This is my signature

"Mrs. Minnie R. Tucker, wife of Arthur S. Tucker deceased"

"Private. Dont Open."

The evidence shows that all of the notations appearing on the envelope in the handwriting of Mrs. Tucker were placed there under the following circumstances:

Mr. Wahl and Mr. and Mrs. Tucker, during Mr. Tucker's lifetime, were close friends. After the death of Mr. Tucker in 1924, the friendship between Mr. Wahl and Mrs. Tucker continued, the former spending much time at the home of Mrs. Tucker and her niece Mrs. Tatum. One afternoon in August, 1935, Mr. Wahl visited Mrs. Tucker. A neighbor, Mrs. Henfling, was there. When Mr. Wahl entered the apartment he took an empty envelope out of his pocket, and asked Mrs. Tucker to sit down at her secretary and to write upon the envelope what he dictated. After a few words had been dictated by Wahl and written by Mrs. Tucker, Mrs. Henfling attempted to excuse herself but was asked by Wahl to remain. Noting that the handwriting of Mrs. Tucker was too large, Mr. Wahl destroyed that envelope, produced another and told Mrs. Tucker to write smaller in order that there might be space on the envelope for all he desired should be placed there. Standing behind Mrs. Tucker's chair he dictated and Mrs. Tucker wrote on the empty envelope that which has been set out above. After the writing was finished Mrs. Tucker handed the envelope to Mr. Wahl, who read what had been written and said: "This is all right. This will be sealed with sealing wax, and there will be something in there for you after I am gone. I will have about two years to live and you will have about ten years longer. The envelope will be in my safe deposit

box, sealed with sealing wax and you see that it hasn't been tampered with. There will be something in it for you and you will not have to worry." He did not say what would be in the envelope nor did he at any time thereafter give it to her. She did not see it again until after his death when it was, as heretofore stated, found in his safe deposit box, sealed with sealing wax and containing twenty-five $1,000 bills. Mr. Wahl had previously often told Mrs. Tucker that he had had an arrangement with her husband and that he, Mr. Wahl, would make an arrangement with her. He at no time had told her what that arrangement would be. Prior to 1935 he remarked to her: "You will not have to worry after I am gone. What Artie didn't get you will get."

Mr. Wahl died suddenly one evening in November, 1937, at Mrs. Tucker's when he, Mrs. Tucker and several friends were playing cards.

After Mr. Wahl's death his executors refused to deliver the envelope containing the $25,000 to Mrs. Tucker. She employed an attorney and suit was filed therefor. The action was contested and resulted in a decree for Mrs. Tucker. A motion for new trial was filed. Both the executors and Mrs. Tucker were represented by eminent and able counsel. There was no understanding or agreement between them up to that time. After the decree was entered, counsel for the executors offered to compromise by the payment of the principal amount sued for if Mrs. Tucker would waive the interest amounting to approximately $3,000. This offer was accepted and counsel for the executors prepared another judgment and decree which was substituted for the former (which had been prepared by Mrs. Tucker's counsel). This latter judgment contained findings, not in the former decree, which were peculiarly apropos to the present position of the estate concerning its liability for estate taxes on this $25,000. No appeal was taken from the latter judgment and it had become final long prior to the institution of this action.

This cause was transferred to this Division by Honorable George H. Moore. While the cause was pending before Judge Moore the question was raised by motion as to whether the decree of the State Court was binding in this action on the question of ownership, by the estate, of the $25,000.00 in question.

On May 13, 1943, Judge Moore entered the following order:

"Order Sustaining Special Defenses and Motion to Strike

"The third, fourth and fifth defenses contained in defendants' answer to the amended petition herein, and defendants' motion to strike and motion to dismiss, having been submitted to the Court upon the evidence adduced and the briefs of the parties, and the Court being fully advised in the premises;

"Now, therefore, it is considered, ordered and decreed that said motion to dismiss is hereby denied;

"It is further considered, ordered and decreed that the said third, fourth and fifth defenses and the said motion to strike are hereby sustained and all reference to and description of the proceedings and the decree in the case of Mrs. Arthur (Minnie S.) Tucker v. Bertha Wahl et al, No. 26669 C., in the Circuit Court of the City of St. Louis, are hereby stricken from paragraph four of the amended petition herein.

"Plaintiffs are granted ten (10) days within which to file herein an amended petition."

The Third, Fourth and Fifth defenses and the Motion to Strike and to Dismiss were as follows:

"Third Defense. The decree pleaded in Paragraph 4 of the amended petition is not admissible in evidence to establish the truth of the recitations therein or the right of plaintiffs to judgment herein because neither these defendants nor their privities were parties to the suit in which the decree was entered.

"Fourth Defense. The decree pleaded in Paragraph 4 of the amended petition is not admissible in evidence to establish the right of plaintiffs to judgment herein because the issues in the suit in which said decree was entered were entirely different than the issues in this action.

"Fifth Defense. The decree pleaded in Paragraph 4 of the amended petition is not admissible in evidence to establish the right of plaintiffs to judgment herein for the following reasons:

"1. That prior to the entry of said decree, the Court had entered a previous decree which contained entirely different recitations and findings; that thereafter the parties to the suit compromised their differences and prevailed upon the Court to

enter a consent decree which gave effect to the compromise agreement; that said consent decree was drawn by an attorney for the taxpayer herein and said attorney caused findings to be written therein which he believed would be advantageous to the taxpayer in this action; that said findings did not represent the true judgment of the Court and the admission of the decree in evidence to prove the truth of said findings would constitute a fraud upon this Court.

"2. That the said findings in said consent decree were not put in issue by the pleadings, were not supported by the evidence and were not necessary to support the result reached by said decree.

"3. That said findings in said consent decree were mere obiter dicta.

"4. That said findings in said consent decree were collateral to the issues in said suit.

"Motion to Strike.

"The Third, Fourth and Fifth Defenses in the foregoing Answer are hereby adopted as a part of this motion to strike and because of the matters set forth therein, the defendants move the Court to strike from the amended petition that portion of Paragraph 4 of said petition which relates to the decree entered on May 29, 1939 in the case of Mrs. Arthur (Minnie S.) Tucker v. Bertha Wahl, et al.

"Motion to Dismiss.

"The Third, Fourth and Fifth Defenses in the foregoing Answer are hereby adopted as part of this motion to dismiss and because of the matters set forth therein, defendants move the Court to dismiss the amended petition herein."

On June 28, 1943, the following order was entered by Judge Moore:

"Amended Order Sustaining Special Defenses and Motion to Strike.

"Upon oral motion of attorneys for defendants, made prior to the trial upon the merits, and for the purpose of making more clear, the terms of the order sustaining the special defenses and motion to strike, entered by the Court on May 13, 1943, said order is hereby amended nunc pro tunc, to read as follows:

"The third, fourth and fifth defenses contained in defendants' answer to the amended petition herein, and defendants' motion to strike and motion to dismiss, having been submitted to the Court upon the evidence adduced and the briefs of the parties, and the Court being fully advised in the premises finds:

"(1) The decree referred to in plaintiffs' amended petition contained findings which did not pertain to any issues created by the pleadings in the State Court proceedings;

"(2) The decree referred to in plaintiffs' amended petition contained findings which were not supported by the evidence in the State Court proceedings;

"(3) The decree referred to in plaintiffs' amended petition was entered by consent of the parties therein, pursuant to a compromise;

"(4) The defendants herein were not parties to the State Court proceedings referred to in plaintiffs' amended petition;

"(5) Said findings above referred to which were not within the issues and were not supported by the evidence in the State Court proceedings were inserted in the consent decree by counsel for the Executors of John B. Wahl, defendants therein, after the parties had entered into an agreement by which the proceedings were compromised and settled;

"(6) Said findings above referred to, which were not within the issues in the case and which were not supported by the evidence, are prejudicial to the defendants in this action.

"Now, therefore, it is considered, ordered and decreed that said motion to dismiss is hereby denied;

"It is further considered, ordered and decreed that the said third, fourth and fifth defenses and the said motion to strike are hereby sustained and all reference to and description of the proceedings and the decree in the case of Mrs. Arthur (Minnie S.) Tucker v. Bertha Wahl, et al., No. 26669 C., in the Circuit Court of the City of St. Louis, are hereby stricken from paragraph four of the amended petition herein.

"Plaintiffs are granted ten (10) days within which to file herein an amended petition."

Plaintiff contends that the ruling of Judge Moore was wrong and that the decree of the State Court is binding and conclusive in this action. Judge Moore's ruling was made after due deliberation. He held that the decree of the State Court was not binding here. That ruling was,

in my judgment, correct. In any event, it will not be reviewed now. The question now for consideration will be limited to a determination of whether the facts in evidence show that the tax was properly levied and collected upon either of the theories advanced by the Government, viz.: (1) That the $25,000.00 was a part of the estate, (2) that in any event the alleged gift was made in contemplation of death, (3) was to take effect in possession and enjoyment at or after death, and (4) was revocable at the will of Mr. Wahl.

Plaintiffs' contention is that the evidence shows the establishment of an equitable trust with Mr. Wahl the trustee and Mrs. Tucker the cestui qui trust. Considerable reliance is placed upon Harris Banking Company v. Miller, 190 Mo. 640, 89 S.W. 629, 1 L.R.A.,N.S., 790.

▮ The examination of the opinion in Harris Banking Company v. Miller and other Missouri cases dealing with the same subject[1] suggests the conclusion that the result reached in the Harris case was brought about by a variation from well established rules relating to property rights in Missouri, rather than from the application of those rules. For many years prior to Harris v. Miller and uniformly since that decision, gifts in præsenti-inter vivos, must, to be effectual, be accomplished by a delivery, either actual or constructive. And if constructive the delivery must have finality and not be revocable at the will of the donor. If the gift is testamentary in character, an equally well established procedure must be observed. These rules are not mere formalities but have for their purpose the substitution of certainty and definiteness in the determination of property rights for the unsettled, ill-defined, shadowy, methods of determining such rights which result from an absence of clear, well-defined and firmly established rules. Neither the delivery necessary to a valid gift inter vivos nor the formality necessary to a valid testamentary gift or devise exist in this case. Learned counsel for the plaintiff recognize this, and as noted, place their reliance on the theory that the established rules should be departed from in this case, as in the Harris case, to get a desired result—the realization of Mr. Wahl's intention. Although this case does not appear to be one which should prompt the Missouri Courts to depart from the charted course of the law of property rights by the application of a rare exception (albeit one very respectable Court appears to have done so), the applicability or inapplicability of the exception urged is not decisive of this case. And that is true because if it be conceded that some sort of equitable title to the contents of the envelope was vested in Mrs. Tucker during Mr. Wahl's lifetime still the facts compel the conclusion that the transfer of title was intended to take effect in possession and enjoyment only at and after the death of the donor, was revocable by him at will, and was made in contemplation of his death (rather accurately estimated by Mr. Wahl to be "about two years" from the date the gift was finally discussed between him and Mrs. Tucker and the envelope inscribed).

▮ Because the gift, if it be valid as such under the Law of Missouri, was intended to take effect in possession and enjoyment only at or after Mr. Wahl's death,[2] because it was revocable at his will,[3] and because it was made in contemplation of death,[4] the tax was properly levied and collected regardless of whether, as the State Court judgment decreed, Mrs. Tucker was entitled to the corpus of the fund after the death of its donor.

Formal findings, conclusions, and a decree will be entered in accordance with the facts and conclusions above stated.

---

[1] State ex rel. v. Blair, 350 Mo. 622, 166 S.W.2d 1085; Cartall v. St. Louis Union Trust Co., 348 Mo. 372, 153 S.W.2d 370.

[2] Section 811(c), Title 26, U.S.C.A. Int. Rev.Code.

[3] Section 811(d), Title 26, U.S.C.A. Int.Rev.Code.

[4] Section 811(c), Title 26, U.S.C.A.Int. Rev.Code.